**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SIRA ROHOMAN, on behalf of herself and all
others similarly situated,

                       Plaintiff,

    vs.

OCWEN FINANCIAL CORPORATION, and
OCWEN LOAN SERVICING, LLC,

                  Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

No. 12-cv-02261-RWS

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO
STATE A CLAIM**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

LEGAL STANDARD................................................................. 2

FACTS .................................................................................... 4

ARGUMENT ........................................................................... 7

I.   THE FILED-RATE DOCTRINE BARS PLAINTIFF'S CLAIMS BASED ON THE
     ALLEGED OVERCHARGING OF LENDER-PLACED HAZARD INSURANCE
     CHARGES. ................................................................... 7

II.  IN ANY EVENT, COUNTS I AND II FAIL BECAUSE NEITHER OFC NOR
     OCWEN SERVICING IS A PARTY TO THE MORTGAGE AGREEMENT AND,
     IN ANY EVENT, THE COMPLAINT FAILS TO PLEAD ANY BREACH. ....... 11

     A. Neither OFC Nor Ocwen Servicing Is a Party to Plaintiff's Mortgage. ........... 11
     B. Plaintiff Has Failed to Plead any Breach. ........................................ 12
     C. The Complaint Likewise Fails to State a Claim for Breach of the Implied
        Covenant of Good Faith and Fair Dealing (Count II)....................... 18

III. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
     FIDUCIARY DUTY (COUNT III). ....................................... 19

     A. Neither OFC Nor Ocwen Servicing Is (Or Has Ever Been) Plaintiff's Fiduciary.
        .................................................................................. 19
     B. Plaintiff's Breach of Fiduciary Duty Claim Is Duplicative of Plaintiff's Breach
        of Contract Claim.......................................................... 21

CONCLUSION........................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. City Fin. Co.*,
 No. 3:02CV1074LN, 2003 WL 21788947 (S.D. Miss. July 14, 2003) ....................................9

*Ashcroft v. Iqbal*
 556 U.S. 662, 129 S. Ct. 1937 (2009)...........................................................2, 14, 15, 16, 17

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955 (2007)...................................................................................2, 3

*Bingaman v. Bingaman*,
 No. 4:07-CV-2352, 2009 WL 2424641 (M.D. Pa. Aug. 5, 2009) ........................................14

*Bowden v. Am. Home Servicing, Inc.*,
 No. 10-12972, 2012 WL 628543 (E.D. Mich. Feb. 27, 2012)..............................................17

*Brass v. Am. Film Technologies, Inc.*,
 987 F.2d 142 (2d Cir. 1993).....................................................................................................3

*Cohen v. Litt*,
 906 F. Supp. 957 (S.D.N.Y. 1995)...........................................................................................3

*Contawe v. Crescent Height of Am., Inc.*,
 No. Civ.A. 04–2304, 2004 WL 2244538 (E.D. Pa. Oct. 1, 2004) ..........................................8

*Cortec Indus., Inc. v. Sum Holding L.P.*,
 949 F.2d 42 (2d Cir. 1991)........................................................................................................6

*Dolan v. Fidelity Nat'l Title Ins. Co.*,
 No. 08-CV-00466, 2009 WL 3934153 (E.D.N.Y. June 17, 2009) ...........................................8

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
 No. 08 Civ. 2437 (RJS), 2011 WL 6034310 (S.D.N.Y. Dec. 5, 2011)..................................21

*Fasolino Foods Co., Inc. v. Banca Nazionale Del Lavoro*,
 961 F.2d 1052 (2d Cir. 1992)............................................................................................18, 19

*Fireman's Fund McMgee Marine v. M/V Caroline*,
 No. 02 Civ. 6188, 2004 WL 287663 (S.D.N.Y. Feb. 11, 2004) ...........................................12

*Gibson v. Chase Home Fin., LLC*,
 No. 11-cv-1302, 2011 WL 6319401 (M.D. Fla. Dec. 16, 2011) ...........................................14

*Hall v. Associated Int'l Ins. Co.*,
    11-CV-4013, 2011 WL 3299104 (D. Kan. Aug. 1, 2011) .........................................................4

*I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)...............................................................................................3, 5

*In re Empire Blue Cross & Blue Shield Customer Litig.*,
    164 Misc. 2d 350, 622 N.Y.S.2d 843 (N.Y. Sup. Ct. 1994) ...................................................10

*Int'l Audiotext Network, Inc. v. AT&T*,
    62 F.3d 69 (2d Cir. 1995) .................................................................................................4, 10

*Kolbe v. BAC Home Loans Servicing, L.P.*,
    No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011) .................................................13

*Lass v. Bank of Am., N.A.*,
    No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011) ...........................................14, 21

*Man Diesel A/S v. Seahawk N. Am. LLC*,
    No. 09 CV 0687(HB), 2009 WL 3030220 (S.D.N.Y. Sept. 22, 2009) ....................................12

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998)...............................................................................................9, 10

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
    No. 2012 WL 1029502 (N.D. Cal. Mar. 26, 2012)................................................................17

*Minihane v. Weissman*,
    640 N.Y.S.2d 102 (N.Y. App. Div. 1st Dep't 1996) .............................................................8

*Morales v. Attorneys' Title Ins. Fund, Inc.*,
    983 F. Supp. 1418 (S.D. Fla. 1997) ...................................................................................8

*Pereira v. Ocwen Loan Servicing, LLC*,
    No. 11-CV-2672, 2012 WL 1381193 (E.D.N.Y. Apr. 18, 2012) ......................................11, 12

*Prentice v. Title Ins. Co. of Minn.*,
    500 N.W.2d 658 (Wis. 1993), *cert. denied*, 510 U.S. 1113 (1994) .........................................8

*Quinn v. Ocwen Fed. Bank FSB*,
    470 F.3d 1240 (8th Cir. 2006) .................................................................................11, 12, 19

*Roussin v. AARP, Inc.*,
    664 F. Supp. 2d 412 (S.D.N.Y. 2009), *aff'd*, No. 09-4932-cv, 2010 WL 2101912 (2d
    Cir. May 26, 2010).........................................................................................................9

*Shugart v. Ocwen Loan Servicing, LLC*,
    747 F. Supp. 2d 938 (S.D. Ohio 2010) ...............................................................................11

*Simon v. Keyspan Corp.*,
   785 F. Supp. 2d 120 (S.D.N.Y. 2011)..................................................................10

*Soley v. Wasserman,*
   823 F. Supp. 2d 221 (S.D.N.Y. 2011)..................................................................19

*Stevens v. Union Planters Corp.*, No. 00-cv-1695, 2000 WL 33128256, at *3 (E.D. Pa.
   Aug. 22, 2000) .......................................................................................................9

*Tetterton v. Ocwen Fed. Bank,*
   379 B.R. 595 (E.D.N.C. 2007)............................................................................12

*Valentini v. Citigroup, Inc.*,
   No. 11 Civ. 1355(LBS), 2011 WL 6780915 (S.D.N.Y. Dec. 27, 2011)...............13

*W.S.A., Inc. v. ACA Corp.*,
   No. 94 CIV. 1868 CSH, 1996 WL 551599 (S.D.N.Y. Sept. 27, 1996) ...........18, 19

*Wahl v. Am. Sec. Ins. Co.*,
   No. 08 CV 0555, 2009 WL 1766620 ......................................................................5

*Wegoland LTD v. Nynex Corp.*,
   27 F.3d 17 (2d Cir. 1994) ......................................................................................8

*Williams v. Wells Fargo Bank N.A.*,
   No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ..............................17

*Williams v. Wells Fargo Bank N.A.*,
   No. 11-21233-civ, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) .........................17

*Woodhams v. Allstate Fire & Cas. Co.*,
   748 F. Supp. 2d 211 (S.D.N.Y. 2010), *aff'd,* No. 10-4389-cv, 2012 WL 5834 (2d
   Cir. Jan. 3, 2012)...................................................................................................8

## STATUTES

N.Y. Ins. Law § 2301 (McKinney)……………………………………….…………...9, 10

## RULES

FED. R. CIV. P. 7.1 ......................................................................................................24

FED. R. CIV. P. 8 ...........................................................................................................2

FED. R. CIV. P. 8(a)....................................................................................................2, 3

FED. R. CIV. P. 9(b) ...................................................................................................2, 19

FED. R. CIV. P. 12(b)(2) ....................................................................................................1

FED. R. CIV. P. 12(b)(6)....................................................................................3, 5, 10, 14, 22

**OTHER AUTHORITIES**

*A Solution to Force-Placed Insurance Litigation for Lenders: Disclosure and Arbitration,* 26 CUMB. L. REV. 537v (1996) ...........................................................4

This Court should dismiss defendants Ocwen Loan Servicing LLC ("Ocwen Servicing") and Ocwen Financial Corporation ("OFC") from this action, with prejudice, for failure to state a claim.[1]

## PRELIMINARY STATEMENT

Plaintiff, Sira Rohoman ("Plaintiff"), brings this three-count putative class action challenging the supposedly "excessive" and "unreasonable" costs of lender-placed hazard and property insurance that was purchased after, as Plaintiff concedes, she failed to do so on her own. Based on the unambiguous terms of her mortgage and the admitted facts of the Complaint, however, the Complaint should be dismissed for failure to state a claim.

Under the mortgage documents at issue and as authorized by New York law, Plaintiff's lender (Wells Fargo) was permitted to purchase insurance for Plaintiff's home because, by her own admission, Plaintiff failed to procure hazard insurance for the property that secured her Wells Fargo mortgage loan. Moreover, as a matter of law, there is nothing "excessive" or "unreasonable" about those charges: The insurance rates charged to Plaintiff were filed and approved by the New York State Insurance Department. As a result, the "filed-rate doctrine" precludes each of Plaintiff's causes of action.

Even if the filed-rate doctrine did not dispose of all her claims, there are no actionable claims. Plaintiff seeks to pursue: (1) two contract-based causes of action for breach of her mortgage against OFC and Ocwen Servicing even though *neither is a party to the mortgage* and Plaintiff has failed to plead *how* the mortgage was breached, and (2) a count for breach of

---

[1] Ocwen Financial Corporation has concurrently filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). It therefore joins this motion only in the alternative.

fiduciary duty, even though neither defendant is, or ever was, Plaintiff's fiduciary. Therefore, Plaintiff's three-count class action Complaint should be dismissed because, as a matter of law, neither OFC nor Ocwen Servicing has liability for any of the three causes of action.

Further, the Complaint should be dismissed for the independently sufficient reason that it fails to plead facts sufficient to permit the Court to draw the reasonable inference that either OFC or Ocwen Servicing is liable for breach of contract or fiduciary duty. To the contrary, the Complaint is based upon speculation that Ocwen Servicing (and its parent, OFC) has engaged in the same misconduct that other, unrelated, lenders or loan servicers have been accused of, in other cases, involving other, unrelated plaintiffs. Such speculation reduces to a logical fallacy: "Guilt by association" fails to state a claim.

Finally, there are other sound grounds for dismissal. Counts II (for breach of the implied covenant of good faith and fair dealing)  and III (for breach of fiduciary duty) should also be dismissed because they are redundant of Count I. Likewise, to the extent that Count III is said to sound in fraud, it should be dismissed for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

A complaint must conform to the pleading requirements set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* (*"Iqbal"*)*,* 556 U.S. 662, 677-78, 129 S. Ct. 1937 (2009). In *Iqbal*, the Supreme Court sharpened and refined the standard for pleading under Rule 8, holding that it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly* (*"Twombly"*),

2

550 U.S. 544, 555 (2007)). Instead, to survive a motion to dismiss, "a complaint must be plausible on its face." *Id*.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

*Id.* (internal citations omitted, emphasis added). Pursuant to Rule 8(a), a plaintiff is required to state a claim "showing that the pleader is entitled to relief." A pleading that fails to state a claim upon which relief can be granted is subject to dismissal. FED. R. CIV. P. 12(b)(6).

A Rule 12(b)(6) motion tests the sufficiency of a plaintiff's pleading. The Court need not accept as true "legal conclusions and unwarranted factual deductions." *Cohen v. Litt,* 906 F. Supp. 957, 961 (S.D.N.Y. 1995). Instead, Rule 12(b)(6) requires that a complaint "contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (internal citation omitted). "[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

For Rule 12(b)(6) purposes, this Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). To prevent a plaintiff from "evad[ing] a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference," this Court may likewise refer to documents referenced but not attached to the Complaint. *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).

This Court may likewise consider a document where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

## FACTS

**The Nature of Lender-Placed Insurance.** Under the typical mortgage (including Plaintiff's, as shown below), the borrower expressly agrees that, if he or she fails to maintain hazard insurance as required under terms of the operative contract, the lender will itself place insurance to protect the lender's interest in the collateral. *See, e.g., A Solution to Force-Placed Insurance Litigation for Lenders: Disclosure and Arbitration,* 26 Cumb. L. Rev. 537, 543-44 (1996). Lender-placed insurance (also known as force-placed insurance) protects the lender by increasing its "ability to recover the outstanding balance of the loan in the event of injury or loss to the collateral supporting the loan." *Id.* at 539. By utilizing lender-placed insurance, lenders protect themselves against loss and thus are able to lower the cost of a loan. *Id.* at 543-44. In addition to allowing for lower-cost loans, lender-placed insurance "can be a beneficial tool to the borrower" to avoid other harsh consequences of default. *Id.* at 542. For example, if a borrower fails to maintain hazard insurance, "the most common alternative to force-placed insurance is repossession of the collateral. Consequently, a monitoring mechanism would appear to be a favorable alternative to repossession." *Id.*

Lender-placed insurance has been a well-established practice in the insurance and financial industries for decades. *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340-41 (11th Cir. 2000) (affirming dismissal of class action claims based on lender-placed insurance procured in 1988); *Hall v. Associated Int'l Ins. Co.,* 11-CV-4013, 2011 WL 3299104, at *7 (D. Kan. Aug. 1, 2011) (lender-placed insurance described as approved and

"widespread"); *Wahl v. Am. Sec. Ins. Co.*, No. 08 CV 0555, 2009 WL 1766620, n. 1 (N.D. Cal. June 18, 2009) (describing lender-placed insurance).

**Facts Concerning Plaintiff.** In June 2007, Plaintiff obtained a mortgage from non-party Wells Fargo Bank, N.A. ("Cmplt."), ¶ 21. Plaintiff's loan was serviced by non-party Litton Loan Servicing LP ("Litton") through at least September 2011, when OFC acquired Litton. *Id.*, ¶ 3 (admitting OFC did not acquire Litton until September 2011), ¶ 41 (admitting Plaintiff's loan was serviced by Litton until at least the OFC acquisition).[2]

As Plaintiff readily concedes, Plaintiff's mortgage with Wells Fargo includes a provision that informs Plaintiff that, if she fails to maintain hazard insurance on her property: (1) her lender may acquire hazard insurance on her behalf; and (2) the cost of the insurance "might significantly exceed the cost of insurance that [Plaintiff] could have obtained." *Id.,* ¶ 22. Under Section 5 of Plaintiff's mortgage, Plaintiff agreed as follows:

> If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. . . . **I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained.** Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument.

*See* Cmplt., ¶ 22 and Plaintiff's Mortgage, p. 5 (Covenants ¶ 5) (emphasis added) (described as Exhibit A to Plaintiff's Complaint but not attached).[3] It is undisputed that Plaintiff failed to

---

[2] Documents referenced by Plaintiff demonstrate that non-party Litton continued to service the loan after this date. Indeed, Plaintiff thereafter refers to a December 29, 2011 letter from Litton to Plaintiff *refunding* unearned premiums on the insurance at issue here. *See* discussion, *infra*.

[3] Plaintiff refers and quotes to the Mortgage at Complaint, ¶¶ 21-23. When a plaintiff refers to but fails to attach a document referenced in its complaint, the court may refer to and rely upon such document on a Rule 12(b)(6) motion to dismiss. *I. Meyer Pincus & Assoc.*, 936 F.2d at 762. A copy of the Mortgage is attached to the Johnson 12(b)(6) Decl. as Exhibit C.

maintain the mortgage-required hazard insurance on her property between August 1, 2011 and October 5, 2011. Cmplt., ¶ 24.

On December 29, 2011, Plaintiff received a letter (the "December 29 Letter") from Litton advising her that "that FPI [force-placed insurance] had been placed on her property, and that it had 'been canceled effective 10/05/11.'" Cmplt., ¶ 24 (describing the December 29 Letter). The December 29 Letter further states, "[a]s a result of the lapse in coverage from 08/01/11 to 10/05/11, an earned premium of $710.56 has been charged to your account for the time the policy was in force," and refers to Policy No. ARA0005732. (Declaration of Gina Johnson in Support of Motion to Dismiss for Failure to State a Claim ("Johnson 12(b)(6) Decl."), ¶ 2, and Exhibit A thereto). The certificate for the referenced insurance, policy No. ARA0005732, issued by American Modern Home, is attached. *See* Carroll Decl., ¶ 3 and Exhibit B thereto.[4]

Thereafter, Plaintiff filed her three-count Complaint. The gravamen of all three counts of the Complaint is that Plaintiff's current loan servicer and its parent company breached both the mortgage and fiduciary duties by purchasing excessively-priced hazard insurance. *See* Cmplt., ¶ 46 (alleging "excessive payments" for insurance); ¶ 54 (challenging excessive cost); ¶ 60 (alleging "excessive" charges for "unreasonable hazard and property insurance").

The Complaint alleges no facts specific to Ocwen Loan Servicing and OFC that her loan was affected by any of the various practices challenged in the Complaint that supposedly results in "excessive" or "unreasonable" fees. Rather, her allegations rely upon unspecified

---

[4] Because the December 29 Letter and the insurance each referenced and integral to the Complaint, this Court may refer to and rely upon both on this motion to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (allowing review of documents unattached to complaint where documents are "integral to [plaintiff's] complaint.").

"news reports," "government inquiries," and "private investigations" that supposedly indicate the existence of a purported "industry-wide practice" of other servicers and insurers engaging in improper conduct in connection with lender-placed insurance. *See. e.g.,* Cmplt., ¶¶ 9-20. Plaintiff's Complaint nowhere alleges facts that tie any of these accounts, inquiries and investigations to Ocwen Loan Servicing and OFC, to her insurance policy, or to the premium charged to her.

## ARGUMENT

I.   **THE FILED-RATE DOCTRINE BARS PLAINTIFF'S CLAIMS BASED ON THE ALLEGED OVERCHARGING OF LENDER-PLACED HAZARD INSURANCE CHARGES.**

As a threshold matter, Plaintiff's Complaint fails in its entirety because the filed-rate doctrine precludes claims that attack the reasonableness of insurance rates approved by the New York State Insurance Department ("NYSID").[5] As noted above, all three of Plaintiff's causes of action are based on the core claim that the lender-placed hazard insurance premium rates charged to Plaintiff were "excessive" or "unreasonable." *See* Cmplt., Count I (Breach of Contract) ¶ 46 (alleging "excessive payments" for insurance); Count II (Violation of the Covenant of Good Faith and Fair Dealing) ¶ 54 (alleging that "costs of the policies purchased by Ocwen exceeded those of policies that adequately protected Ocwen"); and Count III (Breach of Fiduciary Duty), ¶ 60 (alleging "excessive" escrow charges for "unreasonable hazard and property insurance").

Under the filed-rate doctrine, however, an insurance rate that is "approved by the governing regulatory agency—is *per se* reasonable and unassailable in judicial proceedings

---

[5] The New York State Insurance Department was consolidated with the New York State Banking Department, effective October 3, 2011, and is now known as the New York State Department of Financial Services.

brought by rate payers." *Wegoland LTD v. Nynex Corp.*, 27 F.3d 17, 18 (2d Cir. 1994); *see also Woodhams v. Allstate Fire & Cas. Co.,* 748 F. Supp. 2d 211, 220-21 (S.D.N.Y. 2010) (Koeltl, J.) (dismissing claims based on filed-rate doctrine), *aff'd,* No. 10-4389-cv, 2012 WL 5834, at *4 (2d Cir. Jan. 3, 2012). The doctrine is based on four premises: (1) that legislatures have delegated rate setting to administrative agencies, rather than courts; (2) that such agencies have unique expertise in reviewing rates; (3) that permitting collateral challenges to rates would undermine the regulatory scheme; and (4) that allowing such lawsuits could effectively result in rate discrimination between victorious plaintiffs and non-suing ratepayers, thereby interfering with the legislative mandate that rates be uniform. *Wegoland LTD*, 27 F.3d at 19. Thus, "[w]hen a regulated entity" [here, American Modern Home] "has filed rates with a federal or state agency, the doctrine bars any claim that challenges the rates as unreasonable or unlawful." *Dolan v. Fidelity Nat'l Title Ins. Co.*, No. 08-CV-00466, 2009 WL 3934153, at *2 (E.D.N.Y. June 17, 2009). The scope of the doctrine is extraordinarily broad. Even where the filed rates are alleged to be based on fraud, the doctrine still applies to preclude claims premised on filed rates. *Dolan*, 2009 WL 3934153, at *3 (citing *Wegoland LTD*, 27 F.3d at 20). Courts in New York and elsewhere have consistently applied the filed-rate doctrine to cases challenging rates filed with insurance commissions.[6]

---

[6] *See, e.g., Dolan v. Fidelity Nat'l Title Ins. Co.*, No. 08 CV 0046, 2009 WL 3934153 (E.D.N.Y. June 17, 2009), at *3 (title insurance); *Stevens v. Union Planters Corp.,* No. Civ. A. 00–CV–1695, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (lender-placed hazard insurance); *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1426-30 (S.D. Fla. 1997) (title insurance);  *Minihane v. Weissman*, 640 N.Y.S.2d 102, 103 (N.Y. App. Div. 1st Dep't 1996) (health insurance); *Prentice v. Title Ins. Co. of Minn.*, 500 N.W.2d 658, 660-61 (Wis. 1993), *cert. denied*, 510 U.S. 1113 (1994) (title insurance); *Contawe v. Crescent Height of Am., Inc.*, No. Civ.A. 04–2304, 2004 WL 2244538, at *4 (E.D. Pa. Oct. 1, 2004) (title insurance);

The purpose of the filed-rate doctrine is to protect the integrity of the administrative process, and not simply the entity filing the rates. *Roussin v. AARP, Inc.,* 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009) (Marrero, J.), *aff'd,* No. 09-4932-cv, 2010 WL 2101912, at *1 (2d Cir. May 26, 2010) (summary order). As a result, the doctrine shields parties from claims based on filed and approved insurance rates whether or not that defendant was a party to the filing. *Id.* ("courts have applied the filed-rate doctrine to claims brought against parties that did not file the rate at issue."). As a result, the filed-rate doctrine applies with equal force to the lenders that place the insurance. *See, e.g., Anderson v. City Fin. Co.*, No. 3:02CV1074LN, 2003 WL 21788947, at *4 n.9 (S.D. Miss. July 14, 2003) (rejecting suit on filed-rate doctrine grounds against lender based on claim that insurance was excessively priced); *Stevens v. Union Planters Corp.*, No. 00-cv-1695, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (same).

Moreover, the filed-rate doctrine is broad enough to encompass *any* alleged wrongdoing or theory of liability based on the premiums assessed: "[T]he doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either . . . strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998).

Here, the hazard insurance rates paid by Plaintiff are comprehensively regulated by the State of New York. *See* N.Y. Ins. Law § 2301 (McKinney) ("NY INS") §§ 2301, 2340 (rates for "credit property insurance" must be approved, and further empowering the Superintendent of the Department of Financial Services (earlier the NYSID) to promulgate regulations concerning such insurance). The regulation ensures that insurance rates are not "excessive, inadequate or unfairly discriminatory." NY INS § 2301. New York law therefore *requires* that property and casualty insurance rates be filed with the New York Superintendent of Insurance.

NY INS § 2305 ("rate filings . . . shall be filed with the superintendent and shall not become effective unless either the filing has been approved or thirty days . . . have elapsed and the filing has not been disapproved"). Moreover, insurers are barred from charging premiums that vary (up or down) from the filed rates. NY INS § 2314. If the Superintendent finds that a rate is excessive, then he or she may suspend the rate filing, after which the insurer may request a hearing where it will bear the burden of proving that the rate is justified. NY INS § 2321. And if it fails to meet that burden, then the Superintendent will reject the rate. *Id.*

Plaintiff's Complaint refers to (but fails to attach) a December 29, 2011 letter describing the placement of insurance under Policy No. ARA0005732, issued by American Modern Home. Cmplt., ¶ 24; Johnson 12(b)(6) Decl., ¶ 3, and Exhibit B (authenticating insurance referenced in the complaint, ¶ 24).[7] American Modern's hazard insurance rates for lender-placed insurance were indeed filed and approved by NYSID. *See* Declaration of Mark Carroll ("Carroll Decl."), ¶ 2 and Exhibit A thereto (authenticating true and correct copy of American Modern Home's filing with the NYSID).[8]

As a result, Plaintiff's claims, all of which concern the excessive cost of the insurance, are barred by the filed-rate doctrine. *See, e.g., In re Empire Blue Cross & Blue Shield Customer Litig.*, 164 Misc. 2d 350, 360, 622 N.Y.S.2d 843 (N.Y. Sup. Ct. 1994) (dismissing breach of

---

[7] Plaintiff's Complaint is premised on the existence and terms of the coverage provided pursuant to Certificate No. ARA0005732, which is expressly referenced in the December 29 Letter. *See* Complt, ¶ 24. Accordingly, the Court may consider the insurance Certificate in connection with this Rule 12(b)(6) motion. *See, e.g., Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) (recognizing that the Court may consider documents where "integral" to the complaint.)

[8] The Court may take judicial notice of American Modern's filing with the NYSID. *See Simon v. Keyspan Corp.*, 785 F. Supp. 2d 120, 124 n.9 (S.D.N.Y. 2011) (Scheindlin, J.)(granting motion to dismiss based on filed rate doctrine and citing *Marcus*, 138 F.3d at 56, for the proposition that courts, on motion to dismiss, may "analyz[e] applicable tariffs in evaluating filed rate defense on a motion to dismiss.").

contract, fraud and section 349 claims challenging health insurance rates on the basis that the filed-rate doctrine precluded such claims). Because the filed-rate doctrine applies to each of Plaintiff's claims here, they should all be dismissed.

**II.      IN ANY EVENT, COUNTS I AND II FAIL BECAUSE NEITHER OFC NOR OCWEN SERVICING IS A PARTY TO THE MORTGAGE AGREEMENT AND, IN ANY EVENT, THE COMPLAINT FAILS TO PLEAD ANY BREACH.**

Even if the Complaint were not barred entirely by the filed-rate doctrine, Count I of Plaintiff's Complaint should still be dismissed for failure to state a claim for two independently sufficient reasons. *First,* Plaintiff fails to plead that either OFC or Ocwen Servicing is, or ever was, a party to the contract that Plaintiff seeks to enforce. *Second*, even if either OFC or Ocwen Servicing was a party to the contract, the Complaint fails to plead the occurrence of a breach of contract.

**A.      Neither OFC Nor Ocwen Servicing Is a Party to Plaintiff's Mortgage.**

A plaintiff "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity." *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-CV-2672, 2012 WL 1381193, at *3 (E.D.N.Y. Apr. 18, 2012) (affirming dismissal of breach of contract claim where Plaintiffs did not allege the existence of a contractual relationship but alleged only "that Ocwen [Servicing] became the servicer of their mortgage loan."). And, in numerous actions around this country, courts have agreed that Ocwen Servicing cannot be sued for breach of the mortgage contract that Ocwen services. *See, e.g, Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 941-43 (S.D. Ohio 2010) (dismissing breach of contract claim against Ocwen Servicing); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1245 (8th Cir. 2006) (same; "the Quinns cannot show the existence of a valid contract with Ocwen").

Here, Plaintiff seeks damages arising out of the alleged breach of her mortgage, but the only party with which she is in privity is *non-party* Wells Fargo, as "Lender." *See* Mortgage, attached as Exhibit C to Johnson 12(b)(6) Decl., at 1.[9] Like the borrowers in *Pereira*, Plaintiff here alleges, at most, that Ocwen Servicing became her loan servicer after OFC acquired Litton (her original loan servicer) in September 2011. Cmplt., ¶¶ 3, 41. Certainly, Ocwen Servicing's alleged subsequent status as loan servicer, and OFC's status as mere purchaser of Litton (again, a non-party to the mortgage) do not transform either into parties to the mortgage such that either may be sued for breach of the Mortgage. *See Pereira, Shugart*, and *Quinn*, above. Accordingly, the Complaint fails altogether to plead a breach of mortgage claim against either OFC or Ocwen Servicing.[10]

**B.     Plaintiff Has Failed to Plead any Breach.**

Even if Plaintiff were in privity with Ocwen Servicing and OFC, Plaintiff's breach of contract claim fails to state a cause of action because Plaintiff does not identify any breach of the mortgage. It is fundamental that a complaint for breach of contract action must identify the

---

[9] *See* fn. 3, *supra*.

[10] Further, Plaintiff acknowledges that Wells Fargo was entitled to employ a loan servicer as its agent. *See* Complaint, ¶ 23. Therefore, even if Ocwen or OFC were somehow deemed to have contracted with Plaintiff (and they did not), these entities would still *not* be liable because a disclosed agent is not liable for acts conducted on the principal's behalf. *Fireman's Fund McMgee Marine v. M/V Caroline*, No. 02 Civ. 6188 DC, 2004 WL 287663, at *2 (S.D.N.Y. Feb. 11, 2004) ("an agent who makes a contract for a disclosed principal "becomes neither a party to the contract nor liable for the performance of the contract."). New York law recognizes this common law principle. *Man Diesel A/S v. Seahawk N. Am. LLC,* No. 09 CV 0687(HB), 2009 WL 3030220, at *2 (S.D.N.Y. Sept. 22, 2009). Here, only Plaintiff and Wells Fargo are signatories *See, e.g., Tetterton v. Ocwen Fed. Bank*, 379 B.R. 595, 600 (E.D.N.C. 2007) (applying North Carolina law) (loan servicer could not be liable for usury claims: "Ocwen Federal is simply acting as an agent for the holder of the note. Under traditional legal principles, a disclosed agent acting within the course and scope of its agency is not independently liable.")

express terms of the contract that have been breached. *See Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355(LBS), 2011 WL 6780915 (S.D.N.Y. Dec. 27, 2011) ("Defendants argue that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs fail to identify what specific provisions of the contract they claim Defendants breached. We agree. . . . Vague and conclusory allegations . . . are insufficient to make out a claim for breach of contract that can survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.")

Plaintiff alleges that "Defendants breached the terms of the Mortgage by selecting FPI [force-placed insurance] with higher premiums than other policies in order to earn hidden profits and/or other financial benefits by charging residential borrowers for the 'cost' of procuring FPI, even though a portion of the "cost" of such insurance is returned to Defendants." Cmplt., ¶ 44. Plaintiff also alleges, based on the December 29 Letter, that "[i]t appears that this insurance was placed retroactively." Cmplt. ¶ 24.

Plaintiff does not explain how these supposed facts constitute a *breach* of any terms of her Wells Fargo mortgage. For one, Plaintiff does not dispute that she failed to maintain hazard coverage during the period for which she was charged for lender-placed insurance. *See* Cmplt. ¶¶ 24, 44-45. She admits, as she must, that her mortgage provides that the "Lender may obtain insurance coverage" if she failed to maintain her coverage. Cmplt. ¶ 22. Moreover, she further agreed (and was under express notice) that coverage obtained by the Lender might "**significantly exceed the cost of insurance that [Plaintiff] could have obtained**. . . ." *Id.* (emphasis added). Accordingly, Plaintiff's allegation that she was charged "higher premiums than other policies" does not plead a breach a contract. Rather, the Complaint pleads solely that the contract terms were strictly followed. *See, e.g., Kolbe v. BAC Home Loans Servicing, L.P.*, No. 11-10312, 2011 WL 3665394 (D. Mass. Aug. 18, 2011) (granting motion to dismiss

lender-placed insurance claims where contract expressly contemplated complained-of acts); *Lass v. Bank of Am., N.A.,* No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011) (granting motion to dismiss lender-placed flood insurance claims where lender merely followed contract provisions: "plaintiff's mortgage unambiguously gave defendants the discretion to determine the appropriate amount of flood insurance and to purchase that insurance on plaintiff's behalf should she fail to do so").

Moreover, the Complaint's allegation (¶ 24), based on the December 29 Letter, that "[i]t appears that this insurance was placed retroactively" is based on pure speculation, contradicted by the language of the letter, and implausible on its face. To begin, the invocation of the words "retroactive" and "backdated" pleads only an impermissible conclusion couched as a fact, and, thus, should be ignored for purposes of Rule 12(b)(6). *Iqbal,* 129 S. Ct. at 1950. *See Gibson v. Chase Home Fin., LLC*, No. 11-cv-1302, 2011 WL 6319401, at *4 (M.D. Fla. Dec. 16, 2011) (rejecting as conclusory a plaintiff's allegation that lender force placed coverage at "full value of the unit" where complaint failed to include facts supporting valuation). Further, the December 29 Letter itself states that "temporary coverage *was* provided" and that insurance was "Effective" on "08/01/11." The December 29 Letter thus does not support the allegation of retroactive placement; to the contrary, it negates the allegation. Coverage that "was" already in effect at the time was not retroactively placed. Finally, it is illogical, and thus, implausible, to assume that insurance that was canceled after it was placed was necessarily retroactively placed. Cancelation of coverage always follows its placement (whether by borrower or lender). Plaintiff's assertion of retroactive placement thus reduces to logical fallacy: *post hoc, ergo propter hoc* (*i.e.,* since event two followed event one, event two must have been caused by event one). *See, e.g., Bingaman v. Bingaman,* No. 4:07-CV-2352, 2009 WL 2424641, *6 (M.D.

Pa. Aug. 5, 2009) (rejecting as implausible, and thus legally insufficient, allegations arising from the *post hoc* fallacy.)

Similarly, the Complaint pleads not a single fact to support Plaintiff's allegations that the premium charged to her contained "hidden profits and/or other financial benefits" or that any portion of her premium was "returned" to either OFC or Ocwen Servicing. Rather, Plaintiff focuses on unspecified "news reports," "government inquiries," and "private investigations" that supposedly indicate the existence of an "industry-wide practice" of charging "inappropriately high premiums." Cmplt., ¶ 9. The Complaint does not attach these reports or provide their details. Moreover, the Complaint likewise pleads no facts to establish (a) that Plaintiff was charged a higher premium than otherwise available in the market for lender-placed insurance, (b) that she was charged more than the "cost" of the insurance actually placed, or (c) that Ocwen Servicing or any entity affiliated with it obtained "hidden profits" or "benefits" as a result of the premiums charged to her. Without such facts, Plaintiff's reliance on such reports amounts to nothing more than speculation: at most (with a leap of fertile imagination), it suggests a "possibility" that the vaguely specified practice might have affected her loan. But such a possibility (assuming it is that) "stops short" of the pleading standard set by the United States Supreme Court. *Iqbal*, 556 U.S. at 663.

Plaintiff's reliance on conduct by another non-party, Assurant (an unrelated insurer), and yet another non-party, Chase Home Finance (an unrelated loan servicer), is particularly egregious. Cmplt., ¶¶ 11-12. Among other things, the Complaint states that Assurant "cedes" a certain amount of its reinsurance premiums for force-placed insurance to a Chase affiliate. The Complaint characterizes the reinsurance premiums paid to the Chase affiliate as a kickback. Cmplt., ¶ 15. The Complaint pleads "[u]pon information and belief" that "Assurant and its

affiliates provide lender-placed insurance services for Ocwen." *Id.*, ¶ 11. The Complaint does not plead the terms of any supposed Ocwen/Assurant arrangement. It provides no facts to suggest that Ocwen does business with Assurant on the same basis as Chase.

Of equal importance, Plaintiff nowhere pleads (nor could she) that Assurant provided Plaintiff's lender-placed coverage from which she bases her claims, nor could she because the policy was placed by a different carrier, American Modern. See Cmplt., ¶ 24 (referring to December 29 Letter, which references policy issued by American Modern Home). This is especially significant because, without an "excessive" charge by Assurant, Plaintiff does not even identify a remote basis to rest her claims.

Further, as Plaintiff effectively concedes, her loan was serviced by non-party Litton (not OFC or Ocwen Servicing) at the time of the alleged lapse in coverage in August 2011. *See* Cmplt., ¶ 3 (OFC did not purchase Litton until September 2011), ¶ 41 (Litton originally serviced the loan). And the later December 29 Letter, which provides the supposed basis for Plaintiff's claim, was likewise sent from non-party Litton, not OFC or Ocwen Servicing. [11] Moreover, the Complaint pleads no link between Assurant and Litton, and likewise pleads nothing (not one word) about *Litton's* lender-placed insurance practices.[12]

---

[11] *See* Johnson 12(b)(6) Decl., Exhibit A and Cmplt. ¶ 24 (referring to Litton letter dated December 29, 2011).

[12] Although the Court need not consider the issue here, if this action were to proceed past this motion to dismiss, Ocwen Servicing and OFC are prepared to demonstrate that Litton provided due notice, in writing, of the possible placement of insurance (i) in August 2011 when Litton discovered Plaintiff's failure to procure insurance on her property, and further gave Plaintiff 60 days to procure such insurance; and (ii) in October 2011, when it charged Plaintiff for such insurance after she failed to notify Litton of any procurement of insurance. It was only when Plaintiff finally provided a copy of insurance effective as of October 5, 2011 that Plaintiff fulfilled her obligation to maintain hazard insurance on her property.

In short, Plaintiff's generic allegations of misconduct by others fall far short of creating a reasonable inference of misconduct by OFC or Ocwen Servicing in connection with Plaintiff's loan. Instead, to support her contract claim, Plaintiff engages in the worst sort of speculation: guilt by association; and, in effect, has attempted to state a claim for breach of contract against OFC and Ocwen Servicing by making allegations against non-parties Chase and Assurant, and assuming (without stating any foundation) that all loan servicers and all insurance providers must behave the same. That is nonsense and states no claim in this or any federal court. *See, e.g., Bowden v. Am. Home Servicing, Inc.*, No. 10-12972, 2012 WL 628543, at *5 (E.D. Mich. Feb. 27, 2012) (dismissing as implausible under *Iqbal* a claim based on speculation that defendant had engaged in the same misconduct alleged by unrelated plaintiff in a complaint against another, unrelated participant in the same industry.).[13]

---

[13] District courts have issued inconsistent decisions on Rule 12(b)(6) motions to dismiss contract claims arising out of lender placed insurance.  For example, in *.Lass v. Bank of America*, No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11, 2011), the court dismissed the breach of contract claim, finding that, "plaintiff's mortgage unambiguously gave defendants the discretion to determine the appropriate amount of flood insurance and to purchase that insurance on plaintiff's behalf should she fail to do so.  Thus, Lass's claim for breach of contract will be dismissed."  Other district courts have disagreed. *See*, *e.g., Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) (*Williams I*); *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-civ, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ("*Williams II*"); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, C-11-03058, 2012 WL 1029502 (N.D. Cal. Mar. 26, 2012) However, these actions are distinguishable for at least three reasons: *First,* none of these actions consider the applicability of the filed-rate doctrine. *Second*, none consider whether claims for breach of contract or breach of the implied covenant survive against an entity like Ocwen Servicing, whose only alleged role is that of loan servicer. In contrast, the claims in *Williams* were brought against: (a) Wells Fargo Bank, N.A.("Wells Fargo"), as both lender and servicer (*see Williams II*, 2011 WL 4901346, at *1), (b) QBE First Insurance Agency Inc., an insurance broker (*see Williams I*, 2011 WL 4368980, at *1) and (c) Wells Fargo Insurance, Inc., an affiliate of Wells Fargo that allegedly received the reinsurance premiums (*id.*). Likewise, the contract claims in *McNeary* were brought against JP Mortgage Chase and Chase Bank USA, N.A., as lender or assignee of the lender (2012 WL 1029502, at *1). *Third,* each of these actions is premised on specific allegations of defendants' misconduct rather than speculation, as here, that defendants might have engaged in the types of misconduct attributable to others.

**C.      The Complaint Likewise Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II).**

Count II of Plaintiff's Complaint should likewise be dismissed for failure to state a claim for two reasons: *First,* breach of the implied covenant is merely a breach of contract; it is not an independent cause of action. *Second,* as demonstrated above: (a) Ocwen Loan Servicing and OFC are not proper parties to a claim of breach of Plaintiff's mortgage and (b) Plaintiff has failed to state a plausible claim for breach of contract.

Count II fails at the outset because it is not recognized as an independent cause of action under New York law. *See W.S.A., Inc. v. ACA Corp.*, No. 94 CIV. 1868 CSH, 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) ("Because the duty of good faith is an implied contractual term, 'breach of that duty is merely a breach of the underlying contract.' . . . As a result, every court confronted with such a complaint brought under New York law has dismissed the claim for breach of the covenant of fair dealing.") The reason a claim for breach of the implied covenant of good faith and fair dealing is not accepted is simple: the claim is redundant of a breach of contract action. *See id.* ("Raising both claims in a single complaint is, therefore, redundant. As a result, every court confronted with such a complaint brought under New York law has dismissed the claim for breach of the covenant of fair dealing."); *see also Fasolino Foods Co., Inc. v. Banca Nazionale Del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992).

Here, Plaintiff pleads both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing. Both claims are based upon the same allegations: that the lender-placed hazard insurance applied to her property was allegedly excessive or unreasonable and applied retroactively. *See, e.g.,* Cmplt., ¶¶ 44, 45, 54. Thus, applying the foregoing authority, Plaintiff's implied covenant claim is redundant and

unsupported in New York law. *See W.S.A., Inc.*, 1996 WL 551599, at \*9 and *Fasolino Foods*, 961 F.2d at 1056.

Further, because a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing are not independent of each other (*see W.S.A., Inc.*, 1996 WL 551599, at \*9), as with Plaintiff's breach of contract claim, Plaintiff's breach of the implied covenant and good faith and fair dealing claim also fails because privity of contract is lacking. *See Pereira, Shugart*, and *Quinn*, above. And the same lack of independence means that Count II suffer from the same implausibility as Count I.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT III).

Plaintiff's final purported cause of action, for breach of fiduciary duty, should also be dismissed for three independent reasons. *First,* neither OFC nor Ocwen Servicing is, or ever was, Plaintiff's fiduciary. The existence of a fiduciary duty is essential to a claim of its breach. *Second,* Plaintiff's fiduciary duty claim, like its implied covenant claim, is duplicative of her contract claim and should be dismissed as redundant. *Finally*, to the extent that the fiduciary duty claim sounds in fraud, it should be dismissed for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

### A.   Neither OFC Nor Ocwen Servicing Is (Or Has Ever Been) Plaintiff's Fiduciary.

To state a claim for breach of fiduciary duty, a plaintiff must state facts sufficient to create a reasonable inference that a fiduciary relationship exists, or existed at the relevant time, between Plaintiff and one or both of OFC or Ocwen Servicing. *See, e.g., Soley v. Wasserman*, 823 F. Supp. 2d 221, 232 (S.D.N.Y. 2011) ("To establish a claim for breach of fiduciary duty, a plaintiff must prove . . . the existence of a fiduciary relationship . . . .").

Here, the mortgage imposes the escrow duties on the Lender, not on Ocwen Servicing or OFC.  *See* Plaintiff's Mortgage, Ex. C to Johnson 12(b)(6) Decl., p. 6 (Covenants ¶ 3 (b)) (placing obligations regarding escrow on "Lender").[14] Accordingly, it is the Lender that is Plaintiff's fiduciary under the escrow provisions of the Mortgage, and the servicer is merely the Lender's agent for this purpose. And here, the "Lender" under the mortgage is *non-party* "Wells Fargo, N.A." *Id.*, p. 1. The Complaint nowhere alleges (nor could Plaintiff do so) that either OFC or Ocwen Servicing ever became the Lender. Accordingly, neither OFC nor Ocwen Servicing is Plaintiff's fiduciary under the escrow provisions of the mortgage, and Plaintiff's fiduciary duty claim fails as a matter of law.

Moreover, even if OFC or Ocwen Servicing (and not Wells Fargo) were deemed the escrow agent, the mere establishment of an escrow for taxes and insurance does not create a fiduciary duty. In *Menkis v. Whitestone Sav. & Loan Ass'n*, 78 Misc. 2d 329, 356 N.Y.S.2d 485 (N.Y. Dist. Nassau Cty 1974), the court concluded that escrow deposits pursuant to a mortgagor-mortgagee relationship did not meet the requirements of a trust so as to impose fiduciary duties. The reasoning of *Menkis* is persuasive: Indeed, while escrow agents are generally deemed fiduciaries, *Talansky v. Schulman*, 2 A.D.3d 355, 359 (N.Y. App. 1st Dept. 2003), courts have routinely concluded (as in *Menkis*) that a mortgagee's mere advance deposit of funds to pay taxes and insurance does not satisfy the traditional tests for establishing a trust or agency relationship. *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1341 (11th Cir. 2000) (Georgia law). *See also Judd v. First Fed. Sav. & Loan* Ass'n, 710 F.2d 1237, 1241 (7th Cir. 1983) (escrow for taxes and insurance did not create fiduciary duty; "the mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship") (Illinois law);

---

[14] *See* fn. 3, *supra*.

*Hall v. Midland Group*, No. Civ. A. 99-3108, 2000 WL 1725238 (E.D. Pa. Nov. 20, 2000) ("The relationship of mortgagor and mortgagee, including one who escrows sums to ensure satisfaction of tax and insurance obligations, is not per se a fiduciary one.") (Pennsylvania law).

### B. Plaintiff's Breach of Fiduciary Duty Claim Is Duplicative of Plaintiff's Breach of Contract Claim.

As with the above claim for breach of the implied covenant of good faith and fair dealing, a claim for breach of fiduciary duty will be dismissed if it is duplicative of a previous cause of action. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,* No. 08 Civ. 2437 (RJS)*, 2011 WL 6034310, at *21 (S.D.N.Y. Dec. 5, 2011) ("In New York, '[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.")

Plaintiff's breach of fiduciary duty claim is no different from her prior claims in that it is premised upon the same purported wrongdoing – charging allegedly excessive premiums for lender-placed insurance. For example, in paragraph 60 of Plaintiff's Complaint, which summarizes the basis of Plaintiff's breach of fiduciary duty claim, Plaintiff alleges:

> Ocwen breached its fiduciary duty to Plaintiff and other members of the Class by (i) demanding *excessive* escrow payments to recover the cost of *unreasonable* hazard and property insurance; (ii) collecting and holding *excessive funds* in escrow, *in amounts greater than necessary to pay for legitimate charges* for hazard and property insurance; (iii) failing to properly account to Plaintiff for such *excess funds*; and (iv) *profiting from* force-placed hazard insurance policies that were purchased from escrow funds in order to earn commissions at the expense of Plaintiff and other class members.

*See* Cmplt, ¶ 60 (emphasis added). Whether characterized as excessive, unreasonable, or loaded with hidden profits, these are all challenges to the pricing of the insurance. In short, Plaintiff's breach of fiduciary duty claim pleads the same facts as her prior breach of contract claim, but merely seeks relief under a different and equally deficient theory. *See, e.g., Lass,* 2011 WL

3567280 (rejecting breach of fiduciary duty claims concerning lender-placed insurance, and concluding that "Lass's escrow account was established for the express purpose of paying insurance premiums. Thus, it can be inferred that any fees or charges associated with the payment of those premiums could also be withdrawn from the escrow account."). For these additional reasons, Plaintiff's breach of fiduciary duty claim is necessarily duplicative of Plaintiff's breach of contract action and should be dismissed with prejudice.[15]

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint fails to state a cause of action against Ocwen Loan Servicing, LLC and Ocwen Financial Corporation upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: May 16, 2012                        Respectfully submitted,

/s/ Richard E. Gottlieb
Richard E. Gottlieb
Fredrick S. Levin (admitted *pro hac vice*)
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Phone: (312) 876-1700

Thomas A. Leghorn
Cori A. Rosen
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
150 East 42nd Street
New York, NY 10017
Phone: (212) 490-3000
*Counsel for Defendants Ocwen Financial Corporation and Ocwen Loan Servicing LLC*

---

[15] To the extent Plaintiff asserts that her breach of fiduciary duty claim is based upon fraud and thus not duplicative of her prior claims, the claim still fails to state a cause of action. A claim for breach of fiduciary duty sounding in fraud is subject to the heightened pleading standards of Rule 9(b), which requires Plaintiff to plead the time, place, and manner factors of the alleged breach. *See DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ 318(RJS), 2009 WL 2242605, at *10, 14 (S.D.N.Y. July 27, 2009).

## <u>CERTIFICATE OF SERVICE</u>

I, Richard E. Gottlieb, am an attorney admitted to practice before this Court, and hereby certify that:

On May 16, 2012, I caused a true and correct copy of Defendants' Notice of Motion to Dismiss for Failure to State a Claim, Declaration of G. Johnson, Declaration of M. Carroll, Memorandum of Law in Support of Defendants' Motion to Dismiss for Failure to State a Claim, Ocwen Loan Servicing LLC's Fed. R. Civ. P. 7.1 Disclosure Statement and Ocwen Financial Corporation's Fed. R. Civ. P. 7.1 Disclosure Statement to be electronically filed in the United States District Court for the Southern District of New York, thereby causing the same to be electronically submitted to Plaintiff's counsel.

I certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


            /s/ Richard E. Gottlieb
_____



Dated: May 16, 2012